## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 22-52950-PMB |
| | : | |
| ATLANTA LIGHT BULBS, INC., | : | CHAPTER 7 |
| | : | |
| _____Debtor._____ | : | JUDGE BAISIER |
| S. GREGORY HAYS, AS CHAPTER 7 TRUSTEE FOR ATLANTA LIGHT BULBS, INC., DEBTOR, | : | |
| Plaintiff, | : | |
| v. | : | Adv. Pro. No. |
| ROBERT TROY TAITZ, JESSICA MARIE MENDOZA, ALLIANCE ELECTRICAL SERVICES, INC., LUMOS SUPPLIES, LLC and JOHN DOES 1 – 10, | : | |
| _____Defendants._____ | : | |

### COMPLAINT TO AVOID AND RECOVER TRANSFERS, COMPEL TURNOVER OF PROPERTY, AND FOR EQUITABLE AND OTHER RELIEF

Plaintiff S. Gregory Hays, not individually, but as Chapter 7 Trustee ("**Plaintiff**" or "**Trustee**") for the Estate (the "**Estate**") of Atlanta Light Bulbs, Inc., Debtor ("**Debtor**") in the above captioned Bankruptcy Case (the "**Bankruptcy Case**"), by and through counsel, hereby files this *Complaint to Avoid and Recover Transfers, Compel Turnover of Property, and for Equitable and Other Relief* (the "**Complaint**") against Defendants Robert Troy Taitz ("**Taitz**"), Jessica Marie Mendoza ("**Mendoza**"), Alliance Electrical Services, Inc. ("**AES**"), Lumos Supplies, LLC f/k/a Lumos Dynamics LLC ("**Lumos**") and John Does 1-10 (collectively and individually, the "**Defendants**") and alleges upon knowledge, information, and belief as follows:

### NATURE OF ACTION

1.      This adversary proceeding (the "**Adversary Proceeding**") is commenced against an insider or an entity owned by at least one insider of the Debtor to: (a) avoid and recover certain transfers of property or interests of the Debtor from one or more of the Defendants herein or from

any other person or entity for whose benefit the transfers were made; (b) compel the turnover of property of the Estate; (c) recover damages for conversion, breach of fiduciary duty, conspiracy, and unjust enrichment; and (d) obtain an accounting from each of the Defendants herein and other relief as set forth herein. Plaintiff further seeks the Court's assistance to enjoin further transfers, unwind the fraudulent conveyances received by Defendants, and stop efforts to frustrate the Trustee in attempting to recover assets of the Estate.

2.    Defendant Taitz and his significant other, Defendant Mendoza, obtained control of the operations of the Debtor and used such control to divert property of Debtor to themselves and related entities, including Defendants AES and Lumos. Incident to such conduct, Defendants Taitz and Mendoza breached, and aided and abetted the breach of, fiduciary duties owed to the Debtor by: a) converting or otherwise usurping for personal benefit assets and corporate opportunities of the Debtor; b) improperly disposing of, expending, or diverting assets of the Debtor while the Debtor was insolvent; c) improperly disposing of, expending, or diverting the assets of the Debtor without proper documentation; d) improperly continuing the operations up to and beyond the point of insolvency; e) failing to use and adhere to due care, loyalty, disclosure and good faith; f) dissipating, expending, or diverting assets of the Debtor for personal benefit or for the benefit of affiliated companies; g) engaging in transactions that were unfair to the Debtor; h) concealing, continuing, and aiding and abetting conduct to allow for the continuance of tortious conduct; i) engaging in fraudulent or otherwise avoidable transfers made for the sole benefit of one or more of the Defendants; j) committing civil conspiracy or otherwise aiding and abetting the commission of tortious acts against the Debtor; and k) wasting corporate assets of the Debtor.

## JURISDICTION AND VENUE

3.      The statutory and legal predicates for the relief sought herein are sections 105, 541, 542, 544, 547, 548, 550, and 551 of chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**"), O.C.G.A §§ 18-2-74, 18-2-75, and 51-12-30, Rules 6002, 7001, and 7004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and any other applicable law.

4.      Plaintiff also brings this Adversary Proceeding pursuant to applicable state law to obtain an accounting from the Defendants, recover damages for conversion, breach of fiduciary duty, negligence, mismanagement, and waste of corporate assets, civil conspiracy/acting in concert, fraud, and punitive damages from certain of the Defendants.

5.      As a result of the conduct of the Defendants, the rights and interests of the Debtor, its shareholders, and its creditors have been harmed, giving rise to direct claims against these Defendants.

6.      This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157.

7.      This Adversary Proceeding arises out of and relates to the Bankruptcy Case and is a "core" proceeding within the meaning of 28 U.S.C. § 157 to be heard and determined by this Court.

8.      This Court may enter final orders or judgments in this Adversary Proceeding.

9.      Venue over this Adversary Proceeding resides in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     This Court has jurisdiction over the Defendants pursuant to Rule 7004 of the Bankruptcy Rules.

## PROCEDURAL BACKGROUND AND PARTIES

11.    On April 15, 2022, Halco Lighting Technologies, LLC, Norcross Electric Supply Company and Candela Corporation filed an involuntary petition for relief under Chapter 11 of Title 11 of the United States Code against the Debtor in the United States Bankruptcy Court for the Northern District of Georgia (the "**Court**").

12.    On May 23, 2022, the Court entered an Order for Relief under Chapter 11 of the Bankruptcy Code [Doc. No. 21].

13.    On June 15, 2022, the Court entered an order [Doc. No. 58] directing the appointment of a Chapter 11 Trustee on behalf of Debtor.

14.    On June 17, 2022, the Court entered an order [Doc. No. 68] approving the Trustee as Chapter 11 Trustee for Debtor.

15.    On June 23, 2022, the United States Trustee conducted and concluded the Section 341 meeting of creditors at which Defendant Mendoza, the principal of the Debtor, appeared and testified under oath regarding the business of the Debtor.

16.    On July 7, 2022, the Court entered an order [Doc. No. 109] converting the Bankruptcy Case to Chapter 7 and directing the United States Trustee to appoint an interim Chapter 7 Trustee in the Bankruptcy Case.

17.    On July 7, 2022, the United States Trustee appointed S. Gregory Hays as the interim Trustee of the Debtor.

18.    On August 16, 2022, the Trustee conducted and concluded the Section 341 meeting of creditors for the Chapter 7 Bankruptcy Case at which Defendant Mendoza appeared and testified under oath regarding the business of the Debtor.

### THE PARTIES

19.     S. Gregory Hays is the duly appointed and acting permanent Chapter 7 Trustee in this Bankruptcy Case.

20.     The Plaintiff has standing and the right and power to: (a) avoid and recover any transfer of an interest or property of the Debtor or any obligation of the Debtor that may be voided; and (b) assert the claims and seek the relief requested herein.

21.     Upon information and belief, at all times relevant hereto, Defendant Taitz is believed to be and/or held himself out as an officer and operations manager of the Debtor.

22.     Defendant Taitz is a citizen and resident of the State of Georgia who currently resides at either 13104 Parkview Lane, Alpharetta, GA 30005 or 503 Branyan Trl., Milton, GA 30004 and can be served at either address.

23.     Upon information and belief, Defendant Taitz was identified as the operations manager and/or COO of the Debtor. In a November, 8 2021 Resolution and Certification in conjunction with a loan application to the Small Business Administration, Defendant Taitz was listed at the "COO."

24.     Defendant Taitz is listed as Chief Executive Officer for the Debtor on corporate filings with the Georgia Secretary of State dated May 18, 2021 and September 28, 2021. Defendant Taitz may have been or held himself out as an officer or director of the Debtor.

25.     Upon information and belief, at all relevant times hereto, Defendant Taitz owed fiduciary duties to the Debtor.

26.     Upon information and belief, at all relevant times hereto, Defendant Taitz: (a) was familiar with the operations and business affairs of the Debtor; (b) had access to business records

of the Debtor; and (c) was aware that he and Defendant Mendoza owed fiduciary duties to the Debtor.

27.    Pursuant to 11 U.S.C. § 101(31), at all times relevant hereto, Defendant Taitz was an insider of the Debtor.

28.    Upon information and belief, Defendant Mendoza and Defendant Taitz are believed to be in a long-term romantic relationship and cohabitate.

29.    Defendant Mendoza is a citizen and resident of the State of Georgia who currently resides at either 13104 Parkview Lane, Alpharetta, GA 30005 or 503 Branyan Trl., Milton, GA 30004 and can be served at either address.

30.    At all times relevant to this Complaint, Defendant Mendoza was a shareholder, an officer, the general manager, and a person in control of the Debtor.

31.    Upon information and belief, at all relevant times hereto, Defendant Mendoza owed fiduciary duties to the Debtor.

32.    Upon information and belief, at all relevant times hereto, Defendant Mendoza: (a) was familiar with the operations and business affairs of the Debtor; (b) had access to business records of the Debtor; and (c) was aware that she and Defendant Taitz owed fiduciary duties to the Debtor.

33.    Pursuant to 11 U.S.C. § 101(31), at all times relevant hereto, Defendant Mendoza was an insider of the Debtor.

34.    Upon information and belief, Plaintiff anticipates that discovery will show that during all periods relevant to this Complaint, Defendant Mendoza and Defendant Taitz were in control of the operations of the Debtor and held themselves out as the officers or directors of the Debtor.

35.     Defendant AES is an affiliated entity of Defendant Taitz.

36.     Defendant Mendoza is identified as the organizer of Defendant AES on a corporate filing for AES with the Georgia Secretary of State dated November 16, 2021.

37.     Upon information and belief, Defendant AES is owned and controlled by Defendant Taitz. Defendant Taitz is listed as the "Organizer" on Article of  Organization" filed with the Georgia Secretary of State dated June 8, 2021. The Registered Agent for AES is Jeffrey Mangieri, who previously represented AES.

38.     The principal office address for Defendant AES is 2109 Mountain Industrial Blvd, Tucker, GA, 30084 per a corporate filing for Defendant AES with the Georgia Secretary of State filed on April 26, 2022.

39.     Defendant AES is a Georgia corporation authorized to conduct business in the State of Georgia and may be served with this Complaint through its registered agent, Jeffrey Mangieri, at Two Ravinia Drive, Suite 1530, Atlanta, GA, 30346.

40.     Defendant Lumos is an affiliated entity of Defendant Mendoza and Defendant Taitz.

41.     Defendant Mendoza and Defendant Taitz are identified as the organizers of Defendant Lumos on a corporate filing for Lumos with the Georgia Secretary of State dated March 11, 2019.

42.     Defendant Taitz is listed as an authorized signor on a Certificate of Amendment, Name Change, changing the name from Lumos Dynamics LLC to Lumos Supplies LLC filed with the Georgia Secretary of State filed on May 4, 2022. Defendant Taitz is also listed as a "Member" on the April 7, 2022, Application for Reinstatement filed with the Georgia Secretary of State.

43.     Upon information and belief, Defendant Lumos is owned and controlled by Defendant Taitz.

44.     The principal office address for the Defendant Lumos is 2109 Mountain Industrial Blvd, Tucker, GA, 30084 per a corporate filing for Defendant Lumos with the Georgia Secretary of State filed on April 7, 2022.

45.     Defendant Lumos is a Georgia corporation authorized to conduct business in the State of Georgia and may be served with this Complaint through its registered agent, Jeffrey Mangieri, at Two Ravinia Drive, Suite 1530, Atlanta, GA, 30346.

46.     John Does 1 through 10 are individuals or entities who may have received avoidable transfers or who are in possession, custody and control of property of the Estate, but whose identities have been hidden or concealed from the Trustee and are currently unknown to the Trustee.

47.     At all times relevant hereto, at least one of the Defendants was an agent of the Debtor under applicable law responsible for maintaining the property of the Debtor.

48.     Defendants are subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P. 7004 and any other applicable law.

## **FACTUAL BACKGROUND**

### A.  **Inadequate Disclosures and Production**

49.     With the assistance of the professionals of the Trustee, the Trustee has, among other things, conducted an initial and preliminary investigation and review of the affairs of the Debtor that has been hindered by a lack of documentation, records, and information generally related to the financial matters of the Debtor.

50.    As the Bankruptcy Case was an involuntary case, no schedules were filed by the Debtor and the Trustee is still in the process of obtaining additional records.

51.    In potentially an effort to conceal their activities involving the Debtor, Defendant Mendoza and Defendant Taitz failed to maintain complete books and records for the Debtor. During the 341 Meeting and in separate conversations with the Trustee, Defendant Mendoza readily admitted that the financial records of the Debtor are not up to date. The Debtor did not maintain accurate books and records and has not filed tax returns since 2019. Debtor's former accountants at Williams Benator & Libby, LLP advised the Trustee that they had very limited contact with the Debtor since the 2019 tax return was filed.

52.    While the Trustee has obtained limited documents to date, the Trustee does not have all information regarding the bank accounts of the Debtor and has not untangled the financial records of the Debtor. Other than the corporate minute books and being shown a backroom with dated business records from 5- 10 years old, the Trustee has received virtually no current paper documents from the Debtor and was only provided access to Oracle accounting system and an email system. Defendant Mendoza testified at the 341 Meeting that the accounting in Oracle was not kept up to date. The Trustee recently learned of 384 boxes that are in storage and has not yet inspected or aware if any of the records are from the past few years.

53.    The Trustee is aware that the Debtor had at least one account with PNC Bank (the "**PNC Bank Account**") and is in the process of obtaining statements regarding all known accounts of the Debtor. The Trustee is also in the process of obtaining information regarding accounts at Atlantic Capital Bank and Tandem Bank ("**Tandem**").

54.    The Defendants have not assisted with this situation and have yet to produce information to allow the Trustee to address issues regarding all transfers to the Defendants. Indeed,

9

the Debtor has not produced any current paper records to the Trustee and Defendant Mendoza has stated she cannot prepare the Debtor's schedules without bank account records from Atlantic Capital Bank and Tandem.

55.    Defendants Mendoza and Taitz, along with the corporate Defendants, continue to conceal the records and prior activity of the Debtor and the Trustee otherwise currently lacks all records of the Debtor. Under the circumstances, there is significant uncertainty with regard to the use of funds and the disposition of the assets of the Debtor.

56.    The Trustee anticipates that a full and complete accounting by the Defendants and additional documentation, information, and investigation will provide further understanding of transactions involving the Debtor and potential causes of action. Upon information and belief, the Trustee has enough information to establish a pattern of activity and fraudulent transfers to file this complaint.

57.    Upon information and belief, the Defendants have failed to produce and account for all records and property of the Debtor.

**B. The Operations of the Debtor**

58.    The Debtor was founded by Gary Root in approximately 1981.

59.    The Debtor maintained a successful lighting business for decades with a large customer base and innovative products.

60.    As the Debtor grew, the Debtor moved in the early 1990's into a lighting warehouse and showroom located at 2109 Mountain Industrial Blvd., Tucker, GA 30084 (the "**Tucker Location**"). The Debtor would also lease certain property located at 2 Sun Court, Suite 460, Peachtree Corners GA, 30092 (the "**Peachtree Corners Location**").

61.    Jesse Root ("**Root**") worked in the family business that his father founded beginning in approximately 2008, moving from being an account manager to sales manager and Vice President of Sales in charge of the entire sales function of the Debtor.

62.    After the death of Gary Root in 2017, Root and his brother, Doug Root ("**Doug Root**") became co-owners of the of the Debtor.

63.    Upon information and belief, Defendant Mendoza and Defendant Taitz decided at some point to usurp the business and divert funds of the Debtor for their personal benefit directly or indirectly through related parties such as Defendants AES and Lumos.

64.    Pursuant to a certain Stock Purchase Agreement dated September 30, 2019 (the "**Mendoza Purchase Agreement**"), Defendant Mendoza, who had worked at the Debtor for several years at such time, purchased 50% of the Debtor from Doug Root. The remaining 50% of the Debtor was held by Root.

65.    Beginning approximately September 30, 2019, Defendant Mendoza served as the chief executive officer of the Debtor. Defendant Taitz is also listed as the CEO in a filing with Georgia Secretary of State.

66.    Pursuant to an affidavit by Root filed in the Bankruptcy Case as Docket No. 47, Root raised questions regarding the finances of the Debtor and requested access to certain financial data (the "**Root Affidavit**"). A copy of the Root Affidavit is attached hereto as **Exhibit A** and incorporated herein by reference.

67.    Root has informed the Trustee that, after Defendant Mendoza took control of the Debtor, Root noticed various financial irregularities at the business and, as the 50% owner of the Debtor, requested that Defendant Mendoza provide financial information and access to the books and records of the Debtor.

11

68.    Root has further informed the Trustee that Defendant Mendoza refused to provide him with access to the financial records requested by him and fired him.

69.    Although the facts regarding Root's departure are disputed, it is undisputed that Defendant Mendoza took full control of the operations and finances of the debtor in or around September, 2021, if not earlier.

70.    After obtaining control of the Debtor, Defendant Mendoza hired her significant other, Defendant Taitz, to work for the Debtor as the Chief Operations Officer. Defendant Taitz is also listed as CEO on filing with Georgia Secretary of State.

71.    Upon information and belief, Defendant Mendoza also hired family members and/or family members of Defendant Taitz to work for the Debtor.

72.    Upon information and belief, Defendant Mendoza and Defendant Taitz exercised control over the operations and decisions of the Debtor at all times relevant to this Complaint.

73.    Root engaged legal counsel to assist in reviewing certain activities of Defendant Mendoza, Defendant Taitz, and the Debtor, including the uses of funds of the Debtor, that Root alleges were purportedly concealed from Root despite his 50% ownership of the company.

74.    Pursuant to a pleading filed by Root as Docket No. 41 in the Bankruptcy Case, counsel for Root engaged Mr. Bill Jennings ("**Mr. Jennings**"), a forensic accountant, certified fraud examiner, and private investigator, with over 40 years of experience in forensic investigations and fraud investigations, to assist in that process of reviewing the limited financial data available with regard to the Debtor.

75.    Mr. Jennings determined that, during the time period from October 9, 2019, to August 16, 2021, the Debtor paid Defendant Mendoza at least $556,000.00 and Defendant Taitz at least $1,271,323.00 by the Debtor.

76.    During the period from August 17, 2021 through May 2022, the Trustee has identified $515,195.96 in additional payments to Defendant Mendoza and $877,294.78 in additional payments to Defendant Taitz.

77.    Based on information available, the total identified by Mr. Jennings and the Trustee for the period October 9, 2019 through May 2022 paid to Defendant Mendoza is at least $1,071,195.96 and the amount paid to Defendant Taitz is at least $2,148,617.78.

78.    During the period when Defendant Mendoza and Defendant Taitz caused the Debtor to pay them at least Three Million, Two Hundred Twenty Thousand, Nine Hundred and Thirteen Dollars ($3,219,813.74) and possibly more since complete records have not yet been obtained, the Debtor was not making necessary payments to Tandem and to trade creditors on behalf of the Debtor.

79.    As a result of such conduct, the Debtor was not paying obligations as they became due and the Debtor and creditors of the Debtor were harmed.

**C. Transition**

80.    Rather than conducting and documenting the disposition of the inventory or the business of the Debtor, upon information and belief, Defendant Mendoza and Defendant Taitz determined that the Debtor would simply no longer operate and transitioned the assets and business of the Debtor to themselves and their related entities.

81.    The Debtor began plotting this transition or "pivot" to the "new" business(es) in early February 2022 and possibly earlier.

82.    Defendant Mendoza indicated at the 341 Meeting in the Chapter 11 case held on June 23, 2022, that the Debtor purportedly ceased operations on May 13, 2022 and no longer had

any employees after that date. Defendant Mendoza reiterated at the 341 meeting in the Chapter 7

case held on August 16, 2022, that the Debtor closed its operations on May 13, 2022.

83.    Defendant Mendoza claims that: a) the Debtor vacated the Tucker Location in

February, 2022; and b) certain inventory of the Debtor at the Tucker Property was purportedly

moved to the Peachtree Corners Location before that location was also vacated by the Debtor.

84.    The Trustee did not locate any inventory at the Peachtree Corners Location and has

yet to confirm what actually happened to the inventory of the Debtor, but it does not appear that

the Debtor received any benefit from the disposition of substantial unaccounted for inventory of

the Debtor. Upon information and belief, Defendant Lumos and/or Defendant AES sold the

inventory of the Debtor for the benefit of one or more of the Defendants.

85.    Upon information and belief, the business and certain assets of the Debtor were

transitioned to Defendant Mendoza, Defendant Taitz, and/or entities under their control.

86.    Upon information and belief, Defendant Mendoza or Defendant Taitz converted the

business and assets of the Debtor while keeping many expenses in the name of the Debtor.

87.    Upon information and belief, various business entities owned or controlled by

Defendant Mendoza or Defendant Taitz appear to be currently using the Tucker Location.

Defendants apparently began using the location in February, 2022 and continued to occupy the

premises on a month-to-month basis pursuant to an email from counsel to landlord under the name

of Defendant AES.

88.    Defendant Mendoza stated at the 341 Meeting that Defendant AES, which is owned

by Defendant Taitz, now operates out of the Tucker Location with many of the former employees

of the Debtor.

89.     Defendant Mendoza confirmed at the Chapter 11 341 meeting of creditors that the "new" business at the Tucker Location functions with the former employees and certain assets of the Debtor.

90.     Defendant Mendoza has indicated that a good percentage of the employees working at the Tucker Location are former employees of the Debtor and that former employees retained at least certain computers of the Debtor.

91.     On or about May 13, 2022, Defendant Mendoza and Defendant Taitz began operating Lumos as a distributor of various lighting supplies through the website www.lumossupplies.com.  While the website of the Debtor is no longer available, the product mix on the website for Lumos appears to very similar to the products sold by the Debtor.

92.     The Trustee has access to the emails of the Debtor (@atlantalightbulbs.com) and has located many emails from former employees of the Debtor sent under @lumossupplies.com email addresses to former customers and vendors of the Debtor after the May 13, 2022 transition to Lumos. The following are examples of communications referencing the "transition" of the business of the Debtor to Lumos.

> (a) *Hello (Customer), I am reaching out on behalf of our new company, Lumos Supplies (formerly Atlanta Light Bulbs). Atlanta Light Bulbs has been acquired by new ownership and we are up and running with extensive stock and a great line card of lighting and electrical products. We hope that you will consider making us your go-to distributor as you did with the previous company. If you have any questions, please let me know! See* Draft email located in Kevin Taylor's email box (May 13, 2022).

(b) *It's Ashlee, as you can see by my email, we are now Lumos Supplies. See* Email from Ashlee Harris to former ALB customer (May 18, 2022).

(c) *As you can see from my email, we are no (sic) Lumos Supplies. See* Email from Kevin Taylor to former ALB Customer (May 20, 2022).

(d) *We are now Lumos Supplies so your invoice will come from Lumos. See* Email from Keven Taylor to former ALB customer (May 25, 2022).

(e) *ALB has been acquired and are now Lumos Supplies. We will be fulfilling your order under this name. See* Email from Evan Mellies to former ALB customer (June 1, 2022).

(f) *ALB has been acquired and are now Lumos Supplies. We will be fulfilling your order under this name. See* Email from Evan Mellies to former ALB customer (June 2, 2022).

(g) *Thank you for your inquiry into Atlanta Light Bulbs. We are now under new ownership and operating under the name Lumos Supply. See* Email from Evan Mellies to former ALB customer (June 22, 2022).

(h) *Completely forgot that this is your new business* 😊 *– See* Email from ALB vendor to Jessica Mendoza (July 8, 2022).

93.    According to the Debtor's books and records, the book value of the Debtor's inventory as of the conversion date was $146,616.88. The inventory value of $146,616.88 is after a series of inventory adjustments between May 18, 202 and June 16, 2022 totaling $9,244.21. Such period is after the Debtor purportedly ceased operations on May 13, 2022.

94.    Based on the company books and records, the Debtor purchased at least the following assets for the price listed in years 2019 and 2020: (1) Vestil Battery Operated Lift

Stacker ($3,256.20); (2) Heavy Duty Shelf Trucks ($4,774.68); (3) New Warehouse Mgmt System / RF Smart Equipment ($8,117.61); (4) Jessica [Mendoza]'s New Computer w/2 Monitors ($3,064.56); (5) Robert [Taitz]'s Laptop ($2,637.98); (6) Warehouse PCs(3) + Alex's new Surface Book 2 ($3,987.88); (7) MS Surface Book 2 ($3,092.67); (8) 4 27" Monitors + 2 ASUS 14" laptops ($2,591.94); (9) 2 ASUS 14" laptop + AUS 15.6" laptop ($2,159.97).  The Trustee did not locate any of these assets at the Tucker Location.

94. Notwithstanding that the Debtor is no longer receiving any benefit, the Trustee has discovered that certain related expenses, such as the water/sewer bill for the Tucker Location, have remained in the name of the Debtor through the end of June and, as such, the Trustee has been forced to contact various vendors to terminate services that did not belong to the Debtor.

**D. Tandem**

96. On September 2, 2020, the Debtor executed and delivered to Tandem a Promissory Note (the "**Note**") evidencing a revolving line of credit in the maximum principal amount of $600,000.00 (the Note along with any guaranty agreements, security agreement, UCC financing statement, and any and all other documents or instruments relating to the same are hereinafter referred to as the "**Loan Documents**" and the amount due under the Loan Documents is referred to as the "**Indebtedness**").

97. At all times relevant to this Complaint, the Debtor maintained a deposit account with Tandem (the "**Tandem Bank Account**").

98. Prior to the Petition Date, on April 8, 2022, Tandem filed a complaint as the holder of the Indebtedness against Defendant Taitz and Defendant Mendoza to initiate Case No. 2022CV363194 in the Superior Court of Fulton County, State of Georgia (the "**Tandem Action**").

In the Tandem Action, Tandem, *inter alia*, asserted that Defendant Taitz and Defendant Mendoza breached their duties and diverted assets of the Debtor for their own benefit.

99. The complaint filed in the Tandem Action notes that, during the 7 and ½ months between January 5, 2021, and August 16, 2021, Defendant Taitz received 54 large dollar payments totaling $978,553.00 from the Tandem Bank Account and Defendant Mendoza received 2 large dollar check totaling $43,500. Such analysis does not include any transfers by the Debtor from a source other than the Tandem Bank Account or payments made for the benefit of Defendants Taitz or Mendoza.

100. Many, if not all of, the claims and causes of action asserted by Tandem are property of the Estate in the Bankruptcy Case.

**E. Questionable Self-Interested Transactions**

101. The Trustee is investigating the circumstances of several self-interested transactions that appear to be questionable.

102. As further set forth herein, the Transfers (as defined herein) were made to an insider or an entity of an insider and are avoidable by the Trustee.

103. Additional questionable transfers arise from payments issued to satisfy obligations of Defendant Mendoza under the Mendoza Purchase Agreement. Upon information and belief, Defendant Mendoza caused the Debtor to issue payments that were used to pay Doug Root for obligations she owed under the Mendoza Purchase Agreement (the "**Stock Purchase Payments**").

104. Upon information and belief, notwithstanding that it does not appear that the Debtor had any obligation to issue such payments, the Debtor issued payments that were used to satisfy obligations of Defendant Mendoza under the Mendoza Purchase Agreement. The Debtor did not have an obligation to pay such amounts and does not appear to have received reimbursement for

such amounts. Defendant Mendoza should have paid such amounts from her own monies in order to satisfy her obligations under the Mendoza Purchase Agreement.

105.    According to the statements for the PNC Bank Account, the Debtor received a payment in the amount of $1,500,000.00 on February 1, 2022 from the United States Small Business Administration as an Economic Injury Disaster Loan (the "**EIDL Loan**").

106.    Almost immediately after receiving $1,500,000.00 on February 1, 2022, Defendant Mendoza and/or Defendant Taitz caused the Debtor to wire $108,333.42 to Defendant Mendoza and $108,333.42 to Defendant Taitz. Soon thereafter, on February 14, 2022, $633,289.70 was wired by the Debtor to Defendant AES incident to one of the AES Transfers (as defined below).

107.    Upon information and belief, the purpose of obtaining the EIDL Loan appears to be that the EIDL Loan was procured to benefit one or more of the Defendants rather than the Debtor.

108.    The EIDL Loan caused the Debtor to incur additional debt to the detriment of the Debtor and then existing creditors of the Debtor.

109.    The Trustee continues to investigate the use of proceeds from the EIDL Loan.

**F.  Transfers**

110.    During the period where the Debtor was facing financial difficulties and was insolvent or in the vicinity of insolvency, Defendants: a) received significant transfers of assets from the Debtor; and b) diverted assets of the Debtor to Defendants to the detriment of the Debtor and its creditors.

111.    During the period beginning January 1, 2021, through February 2, 2022, the statements for the Tandem Bank Account and PNC Bank Account indicate that Defendant Taitz received payments totaling at least $1,855,847.36 (the "**Taitz Tandem and PNC Transfers**").

The details of each of the Taitz Tandem and PNC Transfers is set forth on **Exhibit B** attached hereto and incorporated by reference.

112.    Although the Trustee intends to seek to avoid and recover such amounts if avoidable, the foregoing does not include: a) payments directly paid to credit cards in the name of Defendant Taitz; b) payments through payroll; c) payment for Defendant Taitz's benefit; d) payments to or for AES or the other businesses of Defendant Taitz; e) payments to Defendant Taitz through the SunTrust and Atlantic Capital Bank accounts of the Debtor; f) transfers to Defendant Taitz controlled entities; or g) all transfers within the four years prior to the Petition Date (the "**Other Taitz Transfers**" and collectively with the Taitz Tandem and PNC Transfers, the "**Taitz Transfers**").

113.    During the period beginning January 1, 2021, through May 20, 2022, the statements for the Tandem Bank Account and PNC Bank Account indicate that Defendant Mendoza received payments totaling at least $558,695.96 (the "**Mendoza Tandem and PNC Transfers**"). The details of each of the Mendoza Tandem and PNC Transfers is set forth on **Exhibit C** attached hereto and incorporated by reference.

114.    Although the Trustee intends to seek to avoid and recover such amounts if avoidable, the foregoing does not include: a) payments directly paid to credit cards in the name of Defendant Mendoza; b) payments through payroll; c) payment for Defendant Mendoza's benefit; d) payments to or for other businesses of Defendant Mendoza; e) payments to Defendant Mendoza through the SunTrust and Atlantic Capita l Bank accounts of the Debtor; f) the Stock Purchase Payments; g) transfers to Defendant Mendoza controlled entities; or h) all transfers within the four years prior to the Petition Date (the "**Other Mendoza Transfers**" and collectively with the Mendoza Tandem and PNC Transfers, the "**Mendoza Transfers**").

20

115.    On February 14, 2022 the Debtor wired $633,289.70 to Defendant AES  (the "**AES Wire**").

116.    On February 14, 2022, the Debtor paid $46,000 to Jeff B. Chandler of Chandler and Sons Services for the purchase of a 2013 Dodge Ram 5500 Truck ("**Truck**"). Although the Truck was purchased by the Debtor, the Truck was titled in the name of AES without the Debtor being reimbursed (the AES Wire and the transfer of the Truck are collectively the "**AES Transfers**").

117.    The Trustee anticipates that, during the course of this Adversary Proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers of money or other property of the Debtor made to one or more of the Defendants during the four (4) years prior to the Petition Date (the "**Additional Transfers**"). To the extent that the Trustee discovers the existence of additional transfers to one or more of any of the Defendants or their related entities that is avoidable, Plaintiff intends to avoid and recover all transfers of property or an interest of the Debtor to or for the benefit of any of the Defendants during the four (4) years prior to the Petition Date (collectively, the Taitz Transfers, Mendoza Transfers, AES Transfers, and Additional Transfers are the "**Transfers**"). This Complaint is not limited to the Transfers disclosed as part of the defined term.

118.    Upon information and belief, the Debtor was insolvent at the time of each of the Transfers or was rendered insolvent as a result of the Transfers.

119.    The Transfers were made in response to the inability of the Debtor to pay its debts as they came due, and with Defendants' knowledge that the Debtor would not be able to pay its obligations such as the Indebtedness as they became due.

120.    Defendants have failed to produce sufficient financial information regarding the Debtor in an attempt to hide the Transfers, the insolvency of the Debtor and other relevant information.

121.    The lack of financial information about the Debtor hindered the ability of creditors to analyze the performance of the Debtor, the propriety of its financial transactions, and the risk associated with transacting business with the Debtor.

122.    Defendants caused the Debtor to complete the Transfers with the actual intent to hinder, delay or defraud the creditors of the Debtor.

123.    The following "badges of fraud" evidence the underlying fraudulent intent of the Transfers: (a) one or more of the Transfers was made to an insider of the Debtor or to affiliates of one or more of the Defendants who are insiders of the Debtor; (b) the Debtor did not receive reasonably equivalent value, if any value, in exchange for one or more of the Transfers; (c) the Debtor was insolvent or became insolvent shortly after one or more of the Transfers was made; and (d) one or more of the Transfers occurred shortly before or after a substantial debt was incurred.

124.    Upon information and belief, the Defendants did not provide the Debtor with reasonably equivalent value for the Transfers.

125.    Upon information and belief, to the extent that any Transfers were not on account of an antecedent debt, the Debtor did not receive reasonably equivalent value in exchange for such transfers.

126.    Upon information and belief, the Transfers were made for less than reasonably equivalent value during the time that the Debtor was insolvent or such transfers rendered the Debtor

insolvent and were made with the actual or constructive intent to hinder, delay or defraud creditors of the Debtor.

### G. Luxury Purchases

127.    On or about August 2, 2021, Defendant Taitz and Defendant Mendoza entered into a contract to purchase the real estate and improvements commonly known as 3860 Falls Landing Drive in Alpharetta, Fulton County, Georgia (as more particularly described in the Warranty Deed the "**Falls Landing Property**"), with a list price of $900,000.

128.    The next day on August 3, 2021, Defendant Mendoza contacted United States Congressman Hank Johnson, 4th Congressional District of Georgia for assistance with a denied EIDL loan amount increase. In the correspondence Defendant Mendoza states, among other things, "We have been severely impacted by the pandemic and its disruption to the supply chain, as many have." and "…please expedite our reconsideration, so we can keep our doors open." and "we are all fighting hard to survive, we just need a little help."

129.    On August 31, 2021, despite being barely able to keep the doors open, Defendant Taitz and Defendant Mendoza jointly purchased the Falls Landing Property from for a stated purchase price of $926,000.00.

130.    Defendant Taitz and Defendant Mendoza financed a portion of their purchase of the Falls Landing Property through two loans from Georgia's Own Credit Union totaling a stated principal amount of $833,400.00, leaving at least $92,600.00 to be paid out of pocket.

131.    Also on August 31, 2021, the Debtor sent a wire transfer for $107,046.13 to Defendant Taitz, which based on the timing and amount, likely was used for the balance of the purchase price of the Falls Landing Property.

132.    In fact, between contacting Congressman Johnson on August 3, 2021 and the closing on Falls Landing Property on August 31, 2021, the Debtor transferred a total of $186,613.81 to Defendant Taitz.

133.    Upon information and belief, Defendant Taitz and Defendant Mendoza recently sold the Falls Landing Property and received substantial proceeds for herself as a result of such sale.

134.    On or about March 12, 2020, Defendant Taitz purchased a "**2020 Porsche Cavenne**" (identified by VIN number WP1AF2AY7LDA39344).

135.    On or about June 25, 2020, Defendant Taitz and Defendant Mendoza purchased a "**2019 Audi Q8**" (identified by VIN number WA1FVBF17KD034367).

136.    On or about January 28, 2021, Defendant Taitz purchased a "**2021 BMW X5**" (identified by VIN number 5YMJU0C03M9F10309).

137.    On or about August 25, 2021, Defendant Taitz and Defendant Mendoza purchased a "**2021 Audi RS**" (identified by VIN number WU1ARBF13MD005961).

138.    Plaintiff anticipates that discovery will show that the (a) the Falls Landing Property, (b) 2020 Porsche Cayenne; (c) 2019 Audi Q8; (d) 2021 BMW X5; (e) 2021 Audi RS; and (f) truck bought for the benefit of AES were acquired with the proceeds of the Transfers and any loan payments associated with the same have been paid using proceeds of the Transfers that are property of the Estate of the Debtor.

**H.  Reservation of Rights**

139.    The Plaintiff reserves the right to amend this original Complaint, including, but not limited to: (a) include further information regarding the Transfers or any other transfers of property of the Estate; (b) include additional transfers; (c) include modifications of and/or revision to the

name of the Defendants; (d) name and serve John Does 1 – 10 as they may be identified during the

course of discovery in this case; and/or (e) include additional causes of action that may become

known to Plaintiff at any time during this Adversary Proceeding, through discovery or otherwise.

Any amendments to this Complaint shall relate back to this original Complaint.

## FIRST CAUSE OF ACTION
### (Avoidance of 90 Day Preferences – 11 U.S.C. §§ 544, 547, 550, and 551)
### (Against AES)

140.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in

the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

141.    The Debtor made each of the AES Transfers within the 90 days immediately

preceding the Petition Date to, or for the benefit of, at least one of the Defendants (the "**90 Day**

**Preference Period**").

142.    Each of the AES Transfers constitutes a transfer of an interest of property of the

Debtor.

143.    Each of the AES Transfers was to, or for the benefit of, a creditor of the Debtor.

144.    The Debtor made each of the AES Transfers for or on account of an antecedent debt

that was owed by the Debtor prior to the date of the AES Transfers.

145.    Each of the AES Transfers was made while the Debtor was insolvent for purposes

of 547(b)(3) of the Bankruptcy Code. Pursuant to Section 547(f) of the Bankruptcy Code, Plaintiff

is entitled to the presumption of insolvency for each of the AES Transfers made during the 90 Day

Preference Period.

146.    Each of the AES Transfers was made during the 90 Day Preference Period.

147.    Each of the AES Transfers enabled AES to receive more than AES would have

received if: (a) the Bankruptcy Case was administered under Chapter 7 of the Bankruptcy Code;

(b) the AES Transfers had not been made; or (c) AES had received payment of the debt owed by the Debtor to the extent allowable pursuant to the Bankruptcy Code.

148.    AES was the initial transferee of the AES Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the AES Transfers were made.

149.    Based on the foregoing, each of the AES Transfers constitutes an avoidable preferential transfer pursuant to sections 544 and 547(b) of the Bankruptcy Code and, in accordance with Sections 550 and 551 of the Bankruptcy Code, the Plaintiff may avoid each of the AES Transfers for the benefit of the Estate of the Debtor.  Based upon the foregoing and based on reasonable due diligence in the circumstances of the case and taking into account known or reasonably knowable affirmative defenses under subsection (c) of 547, Plaintiff is entitled to an order and judgment against AES: (a) avoiding the AES Transfers under section 547(b) of the Bankruptcy Code; and (b) entitling Plaintiff to recover the AES Transfers or the value of the AES Transfers under Sections 550 and 551 of the Bankruptcy Code, together with the award of pre and post judgment interest to the date of payment or other satisfaction of such order and judgment and the costs of this action.

## SECOND CAUSE OF ACTION
### (Avoidance of 90 Day Preferences – 11 U.S.C. §§ 544, 547, 550, and 551)
### (Against Taitz and Mendoza)

150.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

151.    The Debtor made each of the Taitz Transfers and the Mendoza Transfers that were made within the 90 days immediately preceding the Petition Date to, or for the benefit of, at least one of the Defendants (the "**TM Preferential Transfers**") during the 90 Day Preference Period. The details of each of the TM Preferential Transfers of which the Trustee has verified based on

incomplete information and documentation is set forth on **Exhibit D** attached hereto and incorporated by reference. Additional transfers may be added as further information and documentation becomes available to the Trustee.

152.    Each of the TM Preferential Transfers constitutes a transfer of an interest of property of the Debtor.

153.    Each of the TM Preferential Transfers was to, or for the benefit of, a creditor of the Debtor.

154.    The Debtor made each of the TM Preferential Transfers for or on account of an antecedent debt that was owed by the Debtor prior to the date of the TM Preferential Transfers.

155.    Each of the TM Preferential Transfers was made while the Debtor was insolvent for purposes of 547(b)(3) of the Bankruptcy Code. Pursuant to Section 547(f) of the Bankruptcy Code, Plaintiff is entitled to the presumption of insolvency for each of the TM Preferential Transfers made during the 90 Day Preference Period.

156.    Each of the TM Preferential Transfers was made during the 90 Day Preference Period.

157.    Each of the TM Preferential Transfers enabled Defendants Mendoza and/or Taitz to receive more than Defendants Mendoza and/or Taitz would have received if: (a) the Bankruptcy Case was administered under Chapter 7 of the Bankruptcy Code; (b) the TM Preferential Transfers had not been made; or (c) Defendants Mendoza and/or Taitz had received payment of the debt owed by the Debtor to the extent allowable pursuant to the Bankruptcy Code.

158.    Defendants Mendoza and/or Taitz was the initial transferee of the TM Preferential Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the TM Preferential Transfers were made.

27

159.    Based on the foregoing, each of the TM Preferential Transfers constitutes an avoidable preferential transfer pursuant to sections 544 and 547(b) of the Bankruptcy Code and, in accordance with Sections 550 and 551 of the Bankruptcy Code, the Plaintiff may avoid each of the TM Preferential Transfers for the benefit of the Estate of the Debtor.

160.    Based upon the foregoing, and based on reasonable due diligence in the circumstances of the case and taking into account known or reasonably knowable affirmative defenses under subsection (c) of 547, Plaintiff is entitled to an order and judgment: (a) avoiding the TM Preferential Transfers under section 547(b) of the Bankruptcy Code; and (b) entitling Plaintiff to recover the TM Preferential Transfers or the value of the TM Preferential Transfers under Sections 550 and 551 of the Bankruptcy Code, together with the award of pre and post judgment interest to the date of payment or other satisfaction of such order and judgment and the costs of this action.

**THIRD CAUSE OF ACTION**
**(Avoidance of One Year Preferences – 11 U.S.C. §§ 544, 547, 550, and 551)**
**(Against Taitz)**

161.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

162.    Defendant Taitz is an insider of the Debtor.

163.    The Debtor made each of the Transfers made to Defendant Taitz between April 15, 2021 through April 14, 2022, (the "**Taitz One Year Transfers**") within the year immediately preceding the Petition Date to, or for the benefit of, at least one of the Defendants (the "**One Year Preference Period**"). The details of each of the Taitz One Year Transfers of which the Trustee has verified based on incomplete information and documentation is set forth on **Exhibit E** attached

hereto and incorporated by reference. Additional transfers may be added as further information and documentation becomes available to the Trustee.

164.    Each of the Taitz One Year Transfers constitutes a transfer of an interest of property of the Debtor.

165.    Each of the Taitz One Year Transfers was to, or for the benefit of, a creditor of the Debtor.

166.    The Debtor made each of the Taitz One-Year Transfers for or on account of an antecedent debt that was owed by the Debtor prior to the date of the Taitz One Year Transfers.

167.    Each of the Taitz One Year Transfers was made while the Debtor was insolvent for purposes of 547(b)(3) of the Bankruptcy Code. Pursuant to Section 547(f) of the Bankruptcy Code, Plaintiff is entitled to the presumption of insolvency for each of the Taitz One Year Transfers made during the One Year Preference Period.

168.    Each of the Taitz One Year Transfers was made during the One Year Preference Period.

169.    Each of the Taitz One Year Transfers enabled Defendant Taitz to receive more than he would have received if: (a) the Bankruptcy Case was administered under Chapter 7 of the Bankruptcy Code; (b) the Taitz One Year Transfers had not been made; or (c) Defendant Taitz had received payment of the debt owed by the Debtor to the Defendants to the extent allowable pursuant to the Bankruptcy Code.

170.    Defendant Taitz was the initial transferee of the Taitz One Year Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Taitz One Year Transfers were made.

171. Based on the foregoing, each of the Taitz One Year Transfers constitutes an avoidable preferential transfer pursuant to sections 544 and 547(b) of the Bankruptcy Code and, in accordance with Sections 550 and 551 of the Bankruptcy Code, the Plaintiff may avoid each of the Taitz One Year Transfers for the benefit of the Estate of the Debtor.

172. Based upon the foregoing, Plaintiff is entitled to an order and judgment against Defendant Taitz: (a) avoiding the Taitz One Year Transfers under section 547(b) of the Bankruptcy Code; and (b) entitling Plaintiff to recover the Taitz One Year Transfers or the value of the Taitz One Year Transfers under Sections 550 and 551 of the Bankruptcy Code, together with the award of pre and post judgment interest to the date of payment or other satisfaction of such order and judgment and the costs of this action.

## FOURTH CAUSE OF ACTION
### (Avoidance of One Year Preferences – 11 U.S.C. §§ 544, 547, 550, and 551)
### (Against Mendoza)

173. Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

174. Defendant Mendoza is an insider of the Debtor.

175. The Debtor made each of the Transfers made to Defendant Mendoza between April 15, 2021 through April 14, 2022, (the "**Mendoza One Year Transfers**") within the year immediately preceding the Petition Date to, or for the benefit of, at least one of the Defendants. The details of each of the Mendoza One Year Transfers of which the Trustee has verified based on incomplete information and documentation is set forth on **Exhibit F** attached hereto and incorporated by reference. Additional transfers may be added as further information and documentation becomes available to the Trustee.

176.    Each of the Mendoza One Year Transfers constitutes a transfer of an interest of property of the Debtor.

177.    Each of the Mendoza One Year Transfers was to, or for the benefit of, a creditor of the Debtor.

178.    The Debtor made each of the Mendoza One-Year Transfers for or on account of an antecedent debt that was owed by the Debtor prior to the date of the Mendoza One Year Transfers.

179.    Each of the Mendoza One Year Transfers was made while the Debtor was insolvent for purposes of 547(b)(3) of the Bankruptcy Code. Pursuant to Section 547(f) of the Bankruptcy Code, Plaintiff is entitled to the presumption of insolvency for each of the Mendoza One Year Transfers made during the One Year Preference Period.

180.    Each of the Mendoza One Year Transfers was made during the One Year Preference Period.

181.    Each of the Mendoza One Year Transfers enabled Defendant Mendoza to receive more than she would have received if: (a) the Bankruptcy Case was administered under Chapter 7 of the Bankruptcy Code; (b) the Mendoza One Year Transfers had not been made; or (c) Defendant Mendoza had received payment of the debt owed by the Debtor to the Defendants to the extent allowable pursuant to the Bankruptcy Code.

182.    Defendant Mendoza was the initial transferee of the Mendoza One Year Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Mendoza One Year Transfers were made.

183.    Based on the foregoing, each of the Mendoza One Year Transfers constitutes an avoidable preferential transfer pursuant to sections 544 and 547(b) of the Bankruptcy Code and, in

accordance with Sections 550 and 551 of the Bankruptcy Code, the Plaintiff may avoid each of the Mendoza One Year Transfers for the benefit of the Estate of the Debtor.

184.    Based upon the foregoing, Plaintiff is entitled to an order and judgment against Defendant Mendoza: (a) avoiding the Mendoza One Year Transfers under section 547(b) of the Bankruptcy Code; and (b) entitling Plaintiff to recover the Mendoza One Year Transfers or the value of the Mendoza One Year Transfers under Sections 550 and 551 of the Bankruptcy Code, together with the award of pre and post judgment interest to the date of payment or other satisfaction of such order and judgment and the costs of this action.

## FIFTH CAUSE OF ACTION
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. §§ 544, 548, 550, and 551)**
**(Against all Defendants as to the Transfers)**

185.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

186.    The Debtor made the Transfers that were made within two years of the Petition Date to or for the benefit of one of the Defendants within the two years immediately preceding the Petition Date.

187.    Each of the Transfers was made by the Debtor and constitutes a transfer of an interest of the property of the Debtor or obligation incurred by the Debtor without consideration.

188.    Upon information and belief, the Debtor received no direct benefit from each of the Transfers.

189.    Each of the Transfers was made with the actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, indebted on or after the date that each of the fraudulent conveyances was made or such obligation was incurred by the Debtor.

190.    In the alternative, the Debtor received less than reasonably equivalent value in exchange for each of the Transfers and the Debtor:

a.    was insolvent on the dates that the Transfers were made or such obligations were incurred, or became insolvent as a result of the Transfers or the related obligations;

b.    was engaged in business or a transaction, or was about to engage in business or transaction, for which any property remaining with the Debtor was an unreasonably small amount of capital;

c.    intended to incur, or believed that the Debtor would incur, debts that would be beyond the ability of the Debtor to pay as such debts matured; or

d.    made the transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract or not in the ordinary course of business.

191.    Based on the foregoing, each of the Transfers constitute an avoidable fraudulent transfer or obligation incurred without consideration pursuant to Sections 544 and 548 of the Bankruptcy Code and, in accordance with Sections 550 and 551 of the Bankruptcy Code, the Plaintiff may avoid the Transfers and any amounts associated with such obligations.

**SIXTH CAUSE OF ACTION**
**(Avoidance of Fraudulent Transfers)**
**(11 U.S.C. §§ 544, 550, and 551 and O.C.G.A §§ 18-2-74 & 18-2-75)**
**(Against all Defendants as to the Transfers)**

192.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

193.    The Debtor made at least one of the Transfers to or for the benefit of one of the Defendants within the four years immediately preceding the Petition Date.

194.     Each of the Transfers was made by the Debtor and constitute a transfer of an interest of the property of the Debtor or obligation incurred by the Debtor without consideration.

195.     Upon information and belief, the Debtor received no direct benefit from the Transfers.

196.     Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for each of the Transfers when the Debtor: (a) was engaged or was about to engage in a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; (b) intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond its ability to pay as such debts became due; or (c) was insolvent.

197.     In the alternative, each of the Transfers was incurred by the Debtor and made with the actual intent to hinder, delay, or defraud a creditor of the Debtor.

198.     The Debtor had at least one creditor who could have avoided each of the Transfers.

199.     All conditions precedent to bring this action have been performed or have occurred.

200.     Based on the foregoing, each of the Transfers constitute avoidable fraudulent transfers or obligations incurred without consideration pursuant to O.C.G.A §§ 18-2-74 and/or 18-2-75 and Section 544 of the Bankruptcy Code and, in accordance with Sections 550 and 551 of the Bankruptcy Code, the Plaintiff may avoid the Transfers and any amounts associated with such obligations from the Defendants.

<u>**SEVENTH CAUSE OF ACTION**</u>
**(Recovery and Preservation of Avoided Transfers – 11 U.S.C. §§ 550 and 551)**

201.     Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

202.    To the extent that any transfers, including the Transfers, are avoided (collectively, "**Avoided Transfers**"), the Plaintiff may preserve and recover such transfers or obligations pursuant to Sections 550 and 551 of the Bankruptcy Code.

203.    One of the Defendants was the initial transferee of the Avoided Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoided Transfers were made.

204.    Pursuant to Sections 550 and 551 of the Bankruptcy Code, the Plaintiff is entitled to preserve and recover the transfers, plus interest thereon to the date of payment and the costs of this action, for the benefit of the Estate of the Debtor.

### EIGHTH CAUSE OF ACTION
**(Legal and Equitable Accounting)**
**(11 U.S.C. § 105 and Rule 6002 of the Bankruptcy Rules and Georgia Law)**

205.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

206.    Among the statutory duties of a debtor, a "debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) . . . Creditors, . . .any trustee . . . in the case, or the United States Trustee may examine the debtor."  11 U.S.C. § 343; *see also* Fed. R. Bankr. P. 4002(a)(1) (providing that a debtor shall "attend and submit to an examination at the times ordered by the court"). In instances where a trustee is serving in the case, a debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties." 11 U.S.C. § 521(a)(3); *see also* Fed. R. Bankr. P. 4002(a)(4) (providing that a debtor shall "cooperate with the trustee in the preparation of an inventory, the examination of proofs of claim, and the administration of the estate).

35

207.    As former officers of the Debtor, Defendants Taitz and Mendoza should not now be permitted to avoid the responsibility of satisfying the obligations of the Debtor to cooperate with the Trustee.

208.    Rule 6002 further provides that at a "custodian required by the Code to deliver property in the custodian's possession or control to the trustee shall promptly file and transmit to the United States trustee a report and account with respect to the property of the estate and the administration thereof."

209.    In addition to the duties and obligations imposed by the Bankruptcy Code, Defendants are required to account to the Trustee for the assets and records of the Debtor under Georgia Law.

210.    One or more of the Defendants either have possession or control of assets or business records of the Debtor or have information regarding the assets or business records of the Debtor.

211.    One or more of the Defendants have failed to: (a) cooperate with the Trustee as necessary to enable the Trustee to perform the duties of the Trustee; (b) report and account with respect to the property of the estate of the Debtor; (c) account to Plaintiff for all transfers received by the Defendants and any profits and any special benefits obtained as a result of any breach of fiduciary duties by either of the Defendants; or (d) have intentionally hidden and absconded with the assets and business records of the Debtor.

212.    Accordingly, Plaintiff respectfully requests that the Court enter an order directing and compelling the Defendants to report and account with respect to property of the estate of the Debtor, for all damages cause by the Defendants, and all transfers received by the Defendants and

36

any profits and any special benefits obtained as a result of any breach of fiduciary duty by Defendant Mendoza or Defendant Taitz.

### NINETH CAUSE OF ACTION
**(Turnover of Property of the Estate – 11 U.S.C. §§ 541 and 542)**
**(as to All Defendants)**

213.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

214.    Bankruptcy Code section 541(a) provides, in pertinent part, that the bankruptcy estate is comprised, among other things, of "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a).

215.    Bankruptcy Code section 542(a) provides, in pertinent part, that "an entity, . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." *See* 11 U.S.C. § 542(a).

216.    The Trustee does not know the current whereabouts or usage of the inventory and other property of the Debtor or the income derived therefrom.

217.    One or more of the Defendants may remain in wrongful possession, custody, and control of the inventory, business records, or other property of the Debtor or have or may have taken possession of property of the Estate and perhaps other property and the income derived therefrom within the meaning of 11 U.S.C. § 542.

218.    The interest of the Debtor in the inventory, business records, and other property of the Debtor as well as all income derived therefrom constitute property of the Estate pursuant to section 541 of the Bankruptcy Code.

219.    Defendants remain in wrongful possession, custody, and control of property of the Debtor within the meaning of 11 U.S.C. § 542.

220.    Despite its obligations to do so, the Defendants have failed or refused to turnover or cause the turnover to the Trustee of property of the Debtor and the income derived therefrom.

221.    The inventory, business records and other property of the Debtor and the income derived therefrom are of significant value and benefit to the Estate and its creditors.

222.    Accordingly, pursuant to section 542 of the Bankruptcy Code, Plaintiff respectfully requests that the Court enter an order directing and compelling the Defendants to turnover or cause the turnover of the property of the Debtor and all income derived therefrom, including any inventory, documents, books and records of the Debtor.

### TENTH CAUSE OF ACTION
### (Conversion as to Taitz and Mendoza)

223.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

224.    Defendant Taitz and Defendant Mendoza converted assets of the Debtor to their own use and profit and/or to the use and profit of one of more of the Defendants.

225.    Defendant Taitz and Defendant Mendoza willfully and intentionally converted property of the Debtor to their own use and profit and/or to the use and profit of one of more of the Defendants.

226.    Defendant Taitz and Defendant Mendoza continue to exercise dominion and control and/or assert ownership over property of the Debtor.

227.    Defendant Taitz and Defendant Mendoza have failed and refused to return the property of the Debtor either to the Trustee or to the Debtor.

228.    Defendants Taitz and Mendoza are liable to the Trustee for the full value of the property of the Debtor together with all profits derived therefrom.

229.    The actions of Defendant Taitz and Defendant Mendoza in transiting the property of the Debtor away from the Debtor constitute willful misconduct, malice, fraud, wantonness and/or entire want of care as to consequences of actions. Accordingly, the Trustee is entitled to an award of punitive damages in an amount sufficient to deter, penalize or punish Defendant Taitz from and against his intentionally tortious conduct.

**ELEVENTH CAUSE OF ACTION**
**(Fraud and Conspiracy/Acting in Concert)**
**(as to Taitz and Mendoza)**

230.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

231.    Defendant Mendoza and Defendant Taitz owed fiduciary duties to the Debtor that included duties of loyalty, due care, and full disclosure.

232.    Defendant Mendoza and Defendant Taitz breached their fiduciary obligations owed to the Debtor.

233.    As a direct and proximate result of the breaches of fiduciary duties by Defendant Mendoza and Defendant Taitz, the Debtor and its creditors were damaged.

234.    Defendant Mendoza and Defendant Taitz knowingly and intentionally acted in concert to divest the Debtor of its assets, divest creditors of their collateral, and frustrate the efforts of creditors of the Debtor to collect debts.

235.    Defendants conspired to accomplish an unlawful end or to accomplish a lawful end by unlawful means, such as breaching the fiduciary obligations Defendant Mendoza and Defendant

Taitz owed to the Debtor and perpetrating a self-dealing transaction with the diversion of funds of the Debtor and usurpation of corporate opportunity.

236.    Under O.C.G.A. § 18-2-21, the fraudulent arrangement of Defendants to hinder debt collection efforts entitles Plaintiff to legal and equitable relief. Such conduct directly injured the Debtor and frustrated efforts of creditors to collect debts.

237.    Defendants Taitz and Mendoza also committed tortious acts that were in concert with one of more of the Defendants or pursuant to a common design in breach fiduciary duties owed to the Debtor.

238.    Defendant Mendoza and Defendant Taitz recklessly breached the fiduciary duties they owed to the Debtor and further conspired against the Debtor to do so as described elsewhere herein.

239.    The conspiracy to accomplish an unlawful end, using an unlawful means or acting in concert, includes, among other things, the conduct described above and summarized below:

    a.  diverting and misappropriating property of the Debtor for their personal benefit;

    b.  causing property of the Debtor to be fraudulently transferred; and

    c.  creating competing business(es).

240.    Defendant Mendoza and Defendant Taitz understood the general objectives of the conspiratorial scheme, accepted them and agreed, either explicitly or implicitly, to their part to further the objectives of the conspiracy or common scheme.

241.    Defendants acted in concert, pursuant to a common design, and conspired in combination with each other to accomplish, among other things, the torts and breaches described herein.

242.    The Debtor was damaged as a result of the acts committed in the course of the conspiracy. The conspiracy or concerted action aggravated damages caused by the above-mentioned acts.

243.    As a result of the foregoing actions and the conspiracy/concerted action of the Defendants, the Debtor was damaged in an amount not yet capable of being precisely ascertained, but which will be proven at trial.

244.    The fraudulent arrangement of Defendants to hinder debt collection efforts entitles Plaintiff to legal and equitable relief.

245.    The conduct of Defendants directly injured the Debtor and frustrated efforts of creditors to collect debts.

246.    It would be inequitable to allow Defendants to retain the assets from the Debtor, as such would work irreparable injury to Plaintiff.

247.    The Court should therefore determine that Defendants hold the proceeds of assets of the Debtor, including without limitation the proceeds of the Transfers under a constructive trust for the benefit of Plaintiff. The Court should also impress an equitable lien and constructive trust for the benefit of Plaintiff on the proceeds of the Transfers and the (a) the Falls Landing Property, (b) 2020 Porsche Cayenne; (c) 2019 Audi Q8; (d) 2021 BMW X5 and (e) 2021 Audi RS to the extent necessary to satisfy the entry of a judgment against Defendants to the extent of the value Defendants received, jointly or severally, from the Debtor in an amount to be determined at trial.

248.    The Court should also award monetary damages to Plaintiff to compensate it for the injury it suffered as a result of the fraudulent scheme in an amount to be determined at trial.

249.    As a result of the foregoing, Defendant Taitz is liable to Plaintiff for actual damages in an amount to be determined at trial.

250.    Plaintiff is entitled to recover pre- and post-judgment interest at the statutory rate.

251.    Defendants recklessly, willfully, and intentionally conspired or acted in concert with each other. Defendants also acted with an evil mind and with a callous disregard for the Debtor's rights and interests. Accordingly, the Debtor is entitled to punitive damages.

### TWELFTH CAUSE OF ACTION
**(Breach of Fiduciary Duties as to Defendants Taitz and Mendoza)**

252.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

253.    Defendant Taitz was an officer, operations manager, and an insider of the Debtor.

254.    Defendant Mendoza was an officer and an insider of the Debtor.

255.    Through the foregoing relationship, there existed a relationship of dependence and influence whereby Defendants Taitz and Mendoza had fiduciary duties to the Debtor to act with the utmost good faith, honesty, fair dealing, and loyalty and refrain from favoring personal interests at the expense of the interests of the Debtor.

256.    Defendants Taitz and Mendoza were obligated as a fiduciaries to not engage in self-dealing or otherwise promote their interests at the expense of and to the detriment of the Debtor.

257.    Given that the Debtor was insolvent and/or in the zone of insolvency at all times relevant hereto, the fiduciary duties of Defendants Taitz and Mendoza extended to include the interests of creditors of the Debtor.

258.    Defendants Taitz and Mendoza willingly, knowingly, recklessly, and in bad faith breached their fiduciary duties by placing their interests or those of one or more of the Defendants ahead of the interests of the Debtor.

259.    Defendants Taitz and Mendoza failed to use their best skill and judgment to protect the interests of the Debtor.

260.    Defendants Taitz and Mendoza breached their fiduciary duties of loyalty, good faith, and independence by, among other conduct: (a) failing to account for the assets of the Debtor; (b) unfairly competing with the Debtor; (c) terminating the business of the Debtor without obtaining fair value; (d) usurping corporate opportunities of the Debtor and self-dealing for the benefit of one or more of the Defendants and to the detriment of the Debtor; (e) ignoring and failing to protect against conflicts of interest resulting from interrelationships and connections between the Debtor and other parties; and (f) failing to protect the interests of the Debtor or refrain from conduct that would cause injury to the Debtor or deprive the Debtor of profit or advantage, all for personal financial gain.

261.    The conduct of Defendants Taitz and Mendoza constitutes a breach of their fiduciary duties.

262.    As a direct and proximate result of the breach of fiduciary duties by Defendants Taitz and Mendoza, with the cooperation and assistance of one of more of the other Defendants, the business of the Debtor was diverted for the benefit of one or more of the Defendants and the Debtor has sustained irreparable injury in that the Debtor has not received the value for the business of the Debtor that has been siphoned off for the benefit of one or more of the Defendants.

263.    As a direct and proximate result of the breach of fiduciary duties by the Defendants Taitz and Mendoza, the Debtor has sustained injuries for which compensation is sought in the form of: (a) compensatory, consequential, and punitive damages in an amount to be determined at trial; and (b) disgorgement of all profits earned by the Defendants or their affiliates by virtue of any breach of fiduciary duty.

## THIRTEENTH CAUSE OF ACTION
### (Constructive Trust)

43

264.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

265.    Defendants engaged in an artifice or scheme as described herein to deprive the Debtor of funds and assets (the "**Funds**") that should have been retained by the Debtor or used to pay its creditors.

266.    In the alternative, the acts described herein constitute an act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of Plaintiff.

267.    The Court should impose a constructive trust for the benefit of Plaintiff over the Funds, Transfers, and the (a) the Falls Landing Property, (b) 2020 Porsche Cayenne; (c) 2019 Audi Q8; (d) 2021 BMW X5 and (e) 2021 Audi RS or the proceeds thereof.

## FOURTEENTH CAUSE OF ACTION CAUSE OF ACTION
### (Unjust Enrichment)

268.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth in this cause of action.

269.    As a result of the conduct described herein, one or more of the Defendants have been unjustly enriched at the expense of the Debtor.

270.    Accordingly, Defendants should be required to disgorge all transfers, monies, profits and gains that the Defendants or their related entities have obtained or will unjustly obtain in the future at the expense of the Debtor and a constructive trust should be imposed thereon for the benefit of the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that the Court grant relief and enter a judgment in favor of the Plaintiff as follows:

A.      on the First Cause of Action, determines that each of the AES Transfers are avoidable and order that each of the AES Transfers be set aside as preferential transfers and recovered by the Trustee for the benefit of the Estate pursuant to Sections 544, 547(b), 550, and 551 of the Bankruptcy Code;

B.      on the Second Cause of Action, determines that each of the TM Preferential Transfers are avoidable and order that each of the TM Preferential Transfers be set aside as preferential transfers and recovered by the Trustee for the benefit of the Estate pursuant to Sections 544, 547(b), 550, and 551 of the Bankruptcy Code;

C.      on the Third Cause of Action, determines that each of the Taitz One Year Transfers are avoidable and order that each of the Taitz One Year Transfers be set aside as preferential transfers and recovered by the Trustee for the benefit of the Estate pursuant to Sections 544, 547(b), 550, and 551 of the Bankruptcy Code;

D.      on the Fourth Cause of Action, determines that each of the Mendoza One Year Transfers are avoidable and order that each of the Mendoza One Year Transfers be set aside as preferential transfers and recovered by the Trustee for the benefit of the Estate pursuant to Sections 544, 547(b), 550, and 551 of the Bankruptcy Code;

E.      on the Fifth Cause of Action, determines that each of the Transfers are avoidable and order that the Transfers be set aside as fraudulent transfers and recovered by the Trustee for the benefit of the Estate pursuant to sections 544, 548, 550, and 551 of the Bankruptcy Code;

F.      on the Sixth Cause of Action, determines that each of the Transfers are avoidable and order that the Transfers be set aside as fraudulent transfers and recovered by the Trustee for the benefit of the Estate pursuant to sections 544, 550, and 551 of the Bankruptcy Code and O.C.G.A §§ 18-2-74 and/or 18-2-75;

G.      avoids each of the Transfers in favor of the Trustee;

H.      on the Seventh Cause of Action, determines that each of the transfers, to the extent that they are avoided, shall be recovered by Plaintiff pursuant to Sections 550 and 551 of the Bankruptcy Code;

I.      on the Eighth Cause of Action, a judgment and order granting the Trustee a legal and equitable accounting and directing and compelling the Defendants to report and account with respect to property of the estate of the Debtor, for all damages caused by the Defendants, and all transfers received by the Defendants and any profits and any special benefits obtained as a result of any breach of fiduciary duty by Defendant Taitz or Defendant Mendoza;

J.      on the Nineth Cause of Action, enter an award directing and determining that property of the Debtor in the custody and control of one or more of the Defendants is property of the Estate pursuant to section 541 of the Bankruptcy Code and requiring the Defendants to immediately turnover or cause the turnover of said property to Plaintiff pursuant to section 542 of the Bankruptcy Code;

K.      on the Tenth Cause of Action, an award against Defendants for the conversion of the property of the Debtor together with compensatory, consequential, and punitive damages in an amount to be determined at trial;

L.      on the Eleventh Cause of Action, that the Court enter judgment for special damages in favor of Plaintiff and against Defendants Taitz and Mendoza in an amount to be proven at trial and for general damages in favor of Plaintiff and against Defendants Taitz and Mendoza in an amount to be proven at trial;

M.      on the Twelfth Cause of Action, directing and compelling Defendants to report and account with respect to property of the Estate of the Debtor, for all damages caused by one or more

of the Defendants, and all transfers received by the Defendants and all profits and any special benefits obtained by any of the Defendants as a result of any breach of fiduciary duty by Defendants Taitz and Mendoza and impose a constructive trust and impress an equitable lien for the benefit of Plaintiff as appropriate.

N.    in addition to injunctive relief to which the Plaintiff may be entitled on the Twelfth Causes of Action, an award in the form of: (i) compensatory, consequential, and punitive damages in an amount to be determined at trial; and (ii) disgorgement of all profits earned by the Defendants or their affiliates by virtue of any breach of fiduciary duty;

O.    on the Thirteenth Causes of Action, that the Court impose a constructive trust for the benefit of the Trustee;

P.    on the Fourteenth Cause of Action an order directing and compelling the Defendants to: (i) report and account with respect to property of the Estate of the Debtor, for all damages caused by the Defendants, and all transfers received by the Defendants and all profits and any special benefits obtained as a result of any breach of fiduciary duty by Defendant Taitz or Defendant Mendoza; and (ii) disgorge all monies profits, and gains by any of the Defendants or their related entities that were unjustly obtained or will be obtained be unjustly obtained in the future at the expense of the Debtor and imposing a constructive trust for the benefit of the Plaintiff with respect thereto;

Q.    awards pre-judgment interest at the maximum legal rate running from the date of filing of the Complaint to the date of judgment herein;

R.    awards post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

S.    requires the Defendants to pay forthwith the judgment amount awarded in favor of

Plaintiff; and

T.      grants Plaintiff such other and further legal or equitable relief as the Court deems just and proper under the circumstances of this case.

Dated: September 2, 2022.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

*Counsel for S. Gregory Hays, as Chapter 7 Trustee for the Estate of Atlanta Light Bulb, LLC, Debtor*

48

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                                    )          CHAPTER 11
                                          )
ATLANTA LIGHT BULBS, INC.,                )
                                          )          CASE NO. 22-52950-pmb
        Debtor.                           )

## SWORN DECLARATION OF JESSE ROOT

Jesse Root deposes and says:

1. I give this Sworn Declaration in support of my response to the *Motion to Dismiss Bankruptcy Case* filed by Tandem Bank in the above-styled case, the *Motion for Relief from Stay* filed by Tandem Bank in the above-styled case, and for all other purposes permitted by law in the above-styled bankruptcy case.

2. I am over the age of 18, have no disability that would prevent me from testifying competently, and I have personal knowledge of the matters set out herein.

3. My father, Gary Root, founded Atlanta Light Bulbs, Inc. ("ALB") approximately 41 years ago in 1981.

4. ALB was a successful business for decades, with a large customer base and innovative products. ALB sold such products as specialty lamps, projector lamps, medical lamps, miniature lamps, light fixtures, and lighting installations, and moved into newer products such as LED lighting as they entered the market.

5. In 1998, ALB launched a website, becoming one of the first companies in Atlanta to offer its inventory and services online.

6. ALB has been known in the lighting industry for decades, including due to the participation of the Root family in industry groups. Gary Root served on various industry boards and

1

committees over the years, including The National Association of Independent Lighting Distributors ("NALD"), where he served on the board from 2000 through 2006 and where he served as President from 2004 through 2005. I have also been active in industry groups such as NALD.

7. I went to work for ALB beginning in approximately 2008, holding various positions over the years and going from being an account manager, to a sales manager, to a co-owner and the Vice President of Sales who supervised all sales activity for ALB.

8. My father, Gary Root, died in 2017 after a hard battle with a long-term illness.

9. After my father's death in 2017, 50% of ALB was sold by my brother to Jessica Mendoza ("Ms. Mendoza") who became the CEO of ALB.

10. In the capacity of also being a fifty percent (50%) owner of ALB, I raised questions with Ms. Mendoza about how the finances of ALB were being handled and I requested access to certain financial data that was not being provided to me by Ms. Mendoza. In response, Ms. Mendoza terminated my employment with ALB in 2021.

11. Ms. Mendoza hired her boyfriend, Robert Taitz ("Mr. Taitz"), to work for ALB.

12. Ms. Mendoza also hired her family members and/or Mr. Taitz's family members to work for ALB.

13. I understand that an unsecured creditors committee was appointed in this case very recently, and that the unsecured creditors committee intends to move for appointment of a Chapter 11 Trustee.

14. I believe that ALB could be a successful business, under appropriate management, in light of its decades of experience in the lighting industry, its reputation in the industry (although

now somewhat damaged by recent actions), and the relationships with customers and vendors that could be restored under proper management.

15. If a Chapter 11 Trustee were to be appointed by the Court, I am prepared to meet with the Chapter 11 Trustee and to assist him or her.

16. I have reviewed the photographs that my legal counsel submitted as Exhibits "A" through "F" to the response to the Motion to Dismiss of Tandem Bank. Those photographs are of the premises where ALB has maintained a showroom and warehouse since the 1990s. Even when ALB rented other office space, it continued to occupy that showroom and warehouse.

17. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This 12th day of June, 2022.

/s/ *Jesse Root*
Jesse Root

[Notarization unnecessary pursuant to 28 U.S.C. 1746]

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE: )    CHAPTER 11
)
ATLANTA LIGHT BULBS, INC., )
)    CASE NO. 22-52950-pmb
Debtor. )

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day electronically filed the foregoing document using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program, and that I served the foregoing document by depositing a copy of the same in the United States mail with adequate postage on the following:

- **John C. Cannizzaro**    john.cannizzaro@icemiller.com
- **Thomas Dworschak**    thomas.w.dworschak@usdoj.gov, ltctommyd@aol.com
- **Kathleen G. Furr**    kfurr@bakerdonelson.com, lgoforth@bakerdonelson.com;ali.lowe@bakerdonelson.com
- **Ronald A. Levine**    rlevine@levineblock.com, rlevine682@gmail.com
- **Scott B. McMahan**    ecf@poolehuffman.com, scott@poolehuffman.com
- **Leslie M. Pineyro**    lpineyro@joneswalden.com, jwdistribution@joneswalden.com;ljones@joneswalden.com;cmccord@joneswalden.com; arich@joneswalden.com;ewooden@joneswalden.com
- **Todd J Poole**    todd@poolehuffman.com
- **Todd H. Surden**    todd.surden@hartmansimons.com, deloris.person@hartmansimons.com
- **Jason M. Torf**    Jason.Torf@icemiller.com
- **Kristen A. Yadlosky**    kristen.yadlosky@hartmansimons.com, deloris.person@hartmansimons.com

This 13th day of June, 2022.

ROBL LAW GROUP LLC

/s/ Michael Robl
Michael D. Robl
Georgia Bar No. 610905

3754 Lavista Road, Suite 250
Tucker, GA 30084
(404) 373-5153 (telephone)
(404) 537-1761 (facsimile)
michael@roblgroup.com (e-mail)

4

# EXHIBIT B

Atlanta Light Bulbs, Inc.
Payments to Robert Taitz

\* This schedule was prepared based on limited and incomplete documentation and it may be modified and additional transfers may be added as further information and documentation becomes available to the Trustee.

| Check Date | Posted Date | Serial | Bank | Amount |
|---|---|---|---|---|
| | 01/05/21 | 1279 | Tandem | $24,000.00 |
| | 01/05/21 | 1278 | Tandem | $22,000.00 |
| | 01/05/21 | 1277 | Tandem | $19,114.06 |
| | 01/07/21 | 1284 | Tandem | $15,000.00 |
| | 01/07/21 | 1283 | Tandem | $6,500.00 |
| | 01/07/21 | 1282 | Tandem | $3,500.00 |
| | 01/11/21 | 1287 | Tandem | $13,000.00 |
| | 01/13/21 | 1288 | Tandem | $20,000.00 |
| | 01/20/21 | wire | Tandem | $34,000.00 |
| | 01/25/21 | wire | Tandem | $20,906.10 |
| | 01/27/21 | wire | Tandem | $25,000.00 |
| | 02/05/21 | wire | Tandem | $25,000.00 |
| | 02/12/21 | wire | Tandem | $16,000.00 |
| | 02/18/21 | 1379 | Tandem | $25,000.00 |
| | 02/23/21 | 1381 | Tandem | $18,000.00 |
| | 02/24/21 | 1382 | Tandem | $12,716.80 |
| | 03/08/21 | 1399 | Tandem | $10,000.00 |
| | 03/22/21 | 1407 | Tandem | $20,000.00 |
| | 03/26/21 | 1419 | Tandem | $12,123.11 |
| | 04/05/21 | 1426 | Tandem | $9,429.44 |
| | 04/07/21 | 1429 | Tandem | $24,000.00 |
| | 04/13/21 | 1433 | Tandem | $16,500.00 |
| | 04/19/21 | 1437 | Tandem | $9,000.00 |
| | 04/20/21 | 1439 | Tandem | $9,881.98 |
| | 04/21/21 | 1438 | Tandem | $20,000.00 |
| | 05/03/21 | 1460 | Tandem | $40,000.00 |
| | 05/03/21 | 1455 | Tandem | $10,000.00 |
| | 05/05/21 | 1463 | Tandem | $30,000.00 |
| | 05/13/21 | 1476 | Tandem | $24,704.83 |
| | 05/21/21 | 1483 | Tandem | $20,000.00 |
| | 05/21/21 | 1484 | Tandem | $17,000.00 |
| | 05/27/21 | 1485 | Tandem | $15,000.00 |
| | 06/02/21 | 1494 | Tandem | $26,000.00 |
| | 06/07/21 | 1505 | Tandem | $30,000.00 |
| | 06/09/21 | 1507 | Tandem | $18,133.65 |

Atlanta Light Bulbs, Inc.
Payments to Robert Taitz

\* This schedule was prepared based on limited and incomplete documentation and it may be modified and additional transfers may be added as further information and documentation becomes available to the Trustee.

| Check Date | Posted Date | Serial | Bank | Amount |
|---|---|---|---|---|
| | 06/11/21 | 1509 | Tandem | $15,000.00 |
| | 06/14/21 | 1510 | Tandem | $21,500.00 |
| | 06/16/21 | 1512 | Tandem | $9,000.00 |
| | 06/23/21 | 1518 | Tandem | $25,500.00 |
| | 06/25/21 | 1520 | Tandem | $21,000.00 |
| | 06/25/21 | 1521 | Tandem | $2,694.80 |
| | 07/01/21 | 1524 | Tandem | $22,000.00 |
| | 07/07/21 | 1529 | Tandem | $20,801.33 |
| | 07/08/21 | 1528 | Tandem | $16,000.00 |
| | 07/13/21 | 1535 | Tandem | $16,000.00 |
| | 07/13/21 | 1536 | Tandem | $10,000.00 |
| | 07/19/21 | 1538 | Tandem | $10,000.00 |
| | 07/19/21 | 1539 | Tandem | $19,770.75 |
| | 07/20/21 | 1542 | Tandem | $10,000.00 |
| | 07/22/21 | 1545 | Tandem | $16,049.29 |
| | 07/23/21 | 1544 | Tandem | $26,000.00 |
| | 08/13/21 | 1550 | Tandem | $24,000.00 |
| | 08/13/21 | 1551 | Tandem | $11,726.44 |
| | 08/16/21 | 1552 | Tandem | $20,000.00 |
| 08/27/21 | 08/27/21 | Wire | PNC | $23,841.24 |
| 08/31/21 | 08/31/21 | Wire | PNC | $107,046.13 |
| 09/01/21 | 09/01/21 | 10001 | PNC | $24,851.23 |
| 09/01/21 | 09/01/21 | 10002 | PNC | $21,731.26 |
| 09/07/21 | 09/09/21 | 10007 | PNC | $5,886.22 |
| 09/09/21 | 09/09/21 | 10009 | PNC | $16,417.51 |
| 09/14/21 | 09/16/21 | 10011 | PNC | $5,838.98 |
| 09/17/21 | 09/17/21 | 10027 | PNC | $9,352.36 |
| 09/21/21 | 09/21/21 | 10030 | PNC | $29,647.64 |
| 09/22/21 | 09/23/21 | 10036 | PNC | $2,007.24 |
| 09/23/21 | 09/24/21 | 10039 | PNC | $22,826.43 |
| 10/04/21 | 10/05/21 | 10045 | PNC | $21,700.00 |
| 10/06/21 | 10/06/21 | 10047 | PNC | $29,687.43 |
| 10/07/21 | 10/07/21 | 10053 | PNC | $4,496.59 |
| 10/20/21 | 10/22/21 | 10063 | PNC | $14,150.25 |
| 10/25/21 | 10/26/21 | 10067 | PNC | $21,480.76 |

Atlanta Light Bulbs, Inc.
Payments to Robert Taitz

\* This schedule was prepared based on limited and incomplete documentation and it may be
modified and additional transfers may be added as further information and documentation
becomes available to the Trustee.

| Check Date | Posted Date | Serial | Bank | Amount |
|---|---|---|---|---|
| 10/25/21 | 10/26/21 | 10068 | PNC | $3,534.89 |
| 11/01/21 | 11/02/21 | 10070 | PNC | $8,753.33 |
| 11/11/21 | 11/15/21 | 10089 | PNC | $13,093.11 |
| 11/18/21 | 11/18/21 | 10097 | PNC | $2,820.12 |
| 11/22/21 | 11/22/21 | Wire | PNC | $30,754.42 |
| 11/24/21 | 11/26/21 | 10099 | PNC | $17,672.06 |
| 11/24/21 | 11/26/21 | 10100 | PNC | $5,090.35 |
| 11/30/21 | 11/30/21 | 10104 | PNC | $34,062.82 |
| 12/06/21 | 12/07/21 | 10108 | PNC | $35,027.60 |
| 12/08/21 | 12/09/21 | 10125 | PNC | $35,918.04 |
| 12/14/21 | 12/15/21 | 10127 | PNC | $15,178.74 |
| 12/16/21 | 12/17/21 | 10130 | PNC | $19,044.95 |
| 12/21/21 | 12/22/21 | 10135 | PNC | $31,125.05 |
| 12/24/21 | 12/27/21 | 10136 | PNC | $16,728.26 |
| 12/31/21 | 12/31/21 | 10138 | PNC | $14,827.30 |
| 01/04/22 | 01/05/22 | 10140 | PNC | $3,446.68 |
| 01/06/22 | 01/07/22 | 10141 | PNC | $31,686.10 |
| 01/10/22 | 01/12/22 | 10145 | PNC | $17,366.70 |
| 01/20/22 | 01/21/22 | 10148 | PNC | $22,082.30 |
| 01/18/22 | 01/21/22 | 10147 | PNC | $8,198.03 |
| 01/31/22 | 02/01/22 | 10151 | PNC | $17,253.07 |
| 02/01/22 | 02/02/22 | 10154 | PNC | $24,336.17 |
| 02/02/22 | 02/02/22 | Wire | PNC | $108,333.42 |
| | | | | $1,855,847.36 |

# EXHIBIT C

Atlanta Light Bulbs, Inc.
Payments to Jessica Mendoza

\* This schedule was prepared based on limited and incomplete documentation and it may be modified and additional transfers may be added as further information and documentation becomes available to the Trustee.

| Check Date | Posted Date | Serial | Bank | Amount |
|---|---|---|---|---|
| | 1/4/2021 | 1275 | Tandem | $19,500.00 |
| | 4/2/2021 | 1423 | Tandem | $24,000.00 |
| 09/07/21 | 09/07/21 | 10005 | PNC | $2,197.29 |
| 09/16/21 | 09/16/21 | 10026 | PNC | $5,170.00 |
| 09/22/21 | 09/23/21 | 10035 | PNC | $24,456.28 |
| 09/30/21 | 10/01/21 | 10043 | PNC | $17,017.29 |
| 10/04/21 | 10/05/21 | 10046 | PNC | $20,312.57 |
| 10/20/21 | 10/22/21 | 10064 | PNC | $17,031.90 |
| 11/01/21 | 11/02/21 | 10069 | PNC | $40,134.78 |
| 11/04/21 | 11/05/21 | 10072 | PNC | $20,865.22 |
| 11/18/21 | 11/18/21 | 10096 | PNC | $2,179.88 |
| 11/30/21 | 11/30/21 | 10102 | PNC | $24,148.06 |
| 01/04/22 | 01/05/22 | 10139 | PNC | $28,258.34 |
| 01/07/22 | 01/10/22 | 10142 | PNC | $28,633.30 |
| 01/25/22 | 01/26/22 | 10149 | PNC | $28,206.68 |
| 02/01/22 | 02/02/22 | 10153 | PNC | $20,699.71 |
| 02/10/22 | 02/11/22 | 10170 | PNC | $51,049.24 |
| 02/16/21 | 02/17/22 | 10175 | PNC | $30,667.12 |
| 02/22/22 | 02/22/22 | Wire | PNC | $108,333.42 |
| 02/24/22 | 02/25/22 | 10177 | PNC | $20,941.95 |
| 03/25/22 | 03/28/22 | 10186 | PNC | $14,892.93 |
| 03/26/22 | 03/28/22 | 10187 | PNC | $10,000.00 |
| | | | | $558,695.96 |

# EXHIBIT D

Atlanta Light Bulbs, Inc.
90 Day Payments to Robert Taitz
90 Day Payments to Jessica Mendoza

\* This schedule was prepared based on limited and incomplete documentation and it may be modified and additional transfers may be added as further information and documentation becomes available to the Trustee.

| Payee | Check Date | Posted Date | Serial | Bank | Amount |
|-------|-----------|-------------|--------|------|--------|
| Robert Taitz | 01/20/22 | 01/21/22 | 10148 | PNC | $22,082.30 |
| Robert Taitz | 01/18/22 | 01/21/22 | 10147 | PNC | $8,198.03 |
| Robert Taitz | 01/31/22 | 02/01/22 | 10151 | PNC | $17,253.07 |
| Robert Taitz | 02/01/22 | 02/02/22 | 10154 | PNC | $24,336.17 |
| Robert Taitz | 02/02/22 | 02/02/22 | Wire | PNC | $108,333.42 |
| | | | | | $180,202.99 |

| Payee | Check Date | Posted Date | Serial | Bank | Amount |
|-------|-----------|-------------|--------|------|--------|
| Jessica Mendoza | 01/25/22 | 01/26/22 | 10149 | PNC | $28,206.68 |
| Jessica Mendoza | 02/01/22 | 02/02/22 | 10153 | PNC | $20,699.71 |
| Jessica Mendoza | 02/10/22 | 02/11/22 | 10170 | PNC | $51,049.24 |
| Jessica Mendoza | 02/16/21 | 02/17/22 | 10175 | PNC | $30,667.12 |
| Jessica Mendoza | 02/22/22 | 02/22/22 | Wire | PNC | $108,333.42 |
| Jessica Mendoza | 02/24/22 | 02/25/22 | 10177 | PNC | $20,941.95 |
| Jessica Mendoza | 03/25/22 | 03/28/22 | 10186 | PNC | $14,892.93 |
| Petty Cash / Jessica Mendoza | 03/26/22 | 03/28/22 | 10187 | PNC | $10,000.00 |
| | | | | | $284,791.05 |

# EXHIBIT E

Atlanta Light Bulbs, Inc.
One Year Payments to Robert Taitz

\* This schedule was prepared based on limited and incomplete documentation and it may be modified and additional transfers may be added as further information and documentation becomes available to the Trustee.

| Check Date | Posted Date | Serial | Bank | Amount |
|---|---|---|---|---|
| | 04/19/21 | 1437 | Tandem | $9,000.00 |
| | 04/20/21 | 1439 | Tandem | $9,881.98 |
| | 04/21/21 | 1438 | Tandem | $20,000.00 |
| | 05/03/21 | 1460 | Tandem | $40,000.00 |
| | 05/03/21 | 1455 | Tandem | $10,000.00 |
| | 05/05/21 | 1463 | Tandem | $30,000.00 |
| | 05/13/21 | 1476 | Tandem | $24,704.83 |
| | 05/21/21 | 1483 | Tandem | $20,000.00 |
| | 05/21/21 | 1484 | Tandem | $17,000.00 |
| | 05/27/21 | 1485 | Tandem | $15,000.00 |
| | 06/02/21 | 1494 | Tandem | $26,000.00 |
| | 06/07/21 | 1505 | Tandem | $30,000.00 |
| | 06/09/21 | 1507 | Tandem | $18,133.65 |
| | 06/11/21 | 1509 | Tandem | $15,000.00 |
| | 06/14/21 | 1510 | Tandem | $21,500.00 |
| | 06/16/21 | 1512 | Tandem | $9,000.00 |
| | 06/23/21 | 1518 | Tandem | $25,500.00 |
| | 06/25/21 | 1520 | Tandem | $21,000.00 |
| | 06/25/21 | 1521 | Tandem | $2,694.80 |
| | 07/01/21 | 1524 | Tandem | $22,000.00 |
| | 07/07/21 | 1529 | Tandem | $20,801.33 |
| | 07/08/21 | 1528 | Tandem | $16,000.00 |
| | 07/13/21 | 1535 | Tandem | $16,000.00 |
| | 07/13/21 | 1536 | Tandem | $10,000.00 |
| | 07/19/21 | 1538 | Tandem | $10,000.00 |
| | 07/19/21 | 1539 | Tandem | $19,770.75 |
| | 07/20/21 | 1542 | Tandem | $10,000.00 |
| | 07/22/21 | 1545 | Tandem | $16,049.29 |
| | 07/23/21 | 1544 | Tandem | $26,000.00 |
| | 08/13/21 | 1550 | Tandem | $24,000.00 |
| | 08/13/21 | 1551 | Tandem | $11,726.44 |
| | 08/16/21 | 1552 | Tandem | $20,000.00 |
| 08/27/21 | 08/27/21 | Wire | PNC | $23,841.24 |
| 08/31/21 | 08/31/21 | Wire | PNC | $107,046.13 |
| 09/01/21 | 09/01/21 | 10001 | PNC | $24,851.23 |

Atlanta Light Bulbs, Inc.
One Year Payments to Robert Taitz

\* This schedule was prepared based on limited and incomplete documentation and it may be
modified and additional transfers may be added as further information and documentation
becomes available to the Trustee.

| Check Date | Posted Date | Serial | Bank | Amount |
|---|---|---|---|---|
| 09/01/21 | 09/01/21 | 10002 | PNC | $21,731.26 |
| 09/07/21 | 09/09/21 | 10007 | PNC | $5,886.22 |
| 09/09/21 | 09/09/21 | 10009 | PNC | $16,417.51 |
| 09/14/21 | 09/16/21 | 10011 | PNC | $5,838.98 |
| 09/17/21 | 09/17/21 | 10027 | PNC | $9,352.36 |
| 09/21/21 | 09/21/21 | 10030 | PNC | $29,647.64 |
| 09/22/21 | 09/23/21 | 10036 | PNC | $2,007.24 |
| 09/23/21 | 09/24/21 | 10039 | PNC | $22,826.43 |
| 10/04/21 | 10/05/21 | 10045 | PNC | $21,700.00 |
| 10/06/21 | 10/06/21 | 10047 | PNC | $29,687.43 |
| 10/07/21 | 10/07/21 | 10053 | PNC | $4,496.59 |
| 10/20/21 | 10/22/21 | 10063 | PNC | $14,150.25 |
| 10/25/21 | 10/26/21 | 10067 | PNC | $21,480.76 |
| 10/25/21 | 10/26/21 | 10068 | PNC | $3,534.89 |
| 11/01/21 | 11/02/21 | 10070 | PNC | $8,753.33 |
| 11/11/21 | 11/15/21 | 10089 | PNC | $13,093.11 |
| 11/18/21 | 11/18/21 | 10097 | PNC | $2,820.12 |
| 11/22/21 | 11/22/21 | Wire | PNC | $30,754.42 |
| 11/24/21 | 11/26/21 | 10099 | PNC | $17,672.06 |
| 11/24/21 | 11/26/21 | 10100 | PNC | $5,090.35 |
| 11/30/21 | 11/30/21 | 10104 | PNC | $34,062.82 |
| 12/06/21 | 12/07/21 | 10108 | PNC | $35,027.60 |
| 12/08/21 | 12/09/21 | 10125 | PNC | $35,918.04 |
| 12/14/21 | 12/15/21 | 10127 | PNC | $15,178.74 |
| 12/16/21 | 12/17/21 | 10130 | PNC | $19,044.95 |
| 12/21/21 | 12/22/21 | 10135 | PNC | $31,125.05 |
| 12/24/21 | 12/27/21 | 10136 | PNC | $16,728.26 |
| 12/31/21 | 12/31/21 | 10138 | PNC | $14,827.30 |
| 01/04/22 | 01/05/22 | 10140 | PNC | $3,446.68 |
| 01/06/22 | 01/07/22 | 10141 | PNC | $31,686.10 |
| 01/10/22 | 01/12/22 | 10145 | PNC | $17,366.70 |
| 01/20/22 | 01/21/22 | 10148 | PNC | $22,082.30 |
| 01/18/22 | 01/21/22 | 10147 | PNC | $8,198.03 |
| 01/31/22 | 02/01/22 | 10151 | PNC | $17,253.07 |
| 02/01/22 | 02/02/22 | 10154 | PNC | $24,336.17 |

Atlanta Light Bulbs, Inc.
One Year Payments to Robert Taitz

* This schedule was prepared based on limited and incomplete documentation and it may be
modified and additional transfers may be added as further information and documentation
becomes available to the Trustee.

| Check Date | Posted Date | Serial | Bank | Amount |
|---|---|---|---|---|
| 02/02/22 | 02/02/22 | Wire | PNC | $108,333.42 |
| | | | | $1,464,057.85 |

# EXHIBIT F

Atlanta Light Bulbs, Inc.
One Year Payments to Jessica Mendoza

\* This schedule was prepared based on limited and incomplete documentation and it may be modified and additional transfers may be added as further information and documentation becomes available to the Trustee.

| Check Date | Posted Date | Serial | Bank | Amount |
|---|---|---|---|---|
| 09/07/21 | 09/07/21 | 10005 | PNC | $2,197.29 |
| 09/16/21 | 09/16/21 | 10026 | PNC | $5,170.00 |
| 09/22/21 | 09/23/21 | 10035 | PNC | $24,456.28 |
| 09/30/21 | 10/01/21 | 10043 | PNC | $17,017.29 |
| 10/04/21 | 10/05/21 | 10046 | PNC | $20,312.57 |
| 10/20/21 | 10/22/21 | 10064 | PNC | $17,031.90 |
| 11/01/21 | 11/02/21 | 10069 | PNC | $40,134.78 |
| 11/04/21 | 11/05/21 | 10072 | PNC | $20,865.22 |
| 11/18/21 | 11/18/21 | 10096 | PNC | $2,179.88 |
| 11/30/21 | 11/30/21 | 10102 | PNC | $24,148.06 |
| 01/04/22 | 01/05/22 | 10139 | PNC | $28,258.34 |
| 01/07/22 | 01/10/22 | 10142 | PNC | $28,633.30 |
| 01/25/22 | 01/26/22 | 10149 | PNC | $28,206.68 |
| 02/01/22 | 02/02/22 | 10153 | PNC | $20,699.71 |
| 02/10/22 | 02/11/22 | 10170 | PNC | $51,049.24 |
| 02/16/21 | 02/17/22 | 10175 | PNC | $30,667.12 |
| 02/22/22 | 02/22/22 | Wire | PNC | $108,333.42 |
| 02/24/22 | 02/25/22 | 10177 | PNC | $20,941.95 |
| 03/25/22 | 03/28/22 | 10186 | PNC | $14,892.93 |
| 03/26/22 | 03/28/22 | 10187 | PNC | $10,000.00 |
|  |  |  |  | $515,195.96 |